UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
----------------------------X
                            :
UNITED STATES OF AMERICA,    :
                            :   CR-08-906 (KAM)
         v.                 :
                            :   March 5, 2009
SEIDOU MFOMBOUTMOUN,         :
                            :   Brooklyn, New York
              Defendant.    :
                            :
----------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          BENTON CAMPBELL, ESQ.
                            UNITED STATES ATTORNEY
                            BY: PATRICK SINCLAIR, ESQ.
                            ASSISTANT U.S. ATTORNEY
                            225 Cadman Plaza East
                            Brooklyn, New York  11201


For the Defendant:           DAVID GORDON, ESQ.




Audio Operator:


Court Transcriber:           ARIA TRANSCRIPTIONS
                            c/o Elizabeth Barron
                            31 Terrace Drive, 1st Floor
                            Nyack, New York 10960
                            (215) 767-7700



Proceedings recorded by electronic sound recording,
transcript produced by transcription service

```
 1              THE CLERK:  U.S. versus Mfomboutmoun.  Docket
 2    number 08-CR-906.  Please state appearance for the record.
 3              MR. SINCLAIR:  For the United States, Patrick
 4    Sinclair.  Good afternoon, your Honor.
 5              THE COURT:  Good afternoon.
 6              MR. GORDON:  David Gordon for Mr. Mfomboutmoun.
 7              THE INTERPRETER:  And Mouvir Khaddar, French
 8    interpreter.
 9              (Interpreter is sworn)
10              THE COURT:  And Mr. Mfomboutmoun is with us.
11              THE DEFENDANT:  Mfomboutmoun.
12              THE COURT:  You're Mr. Mfomboutmoun.  Good
13    afternoon, Sir.
14              And, Mr. Gordon, I understand your client is here
15    because he wishes to enter a plea of guilty to Count 1.
16              MR. GORDON:  Yes.  It's the only count that he's
17    named in.
18              THE COURT:  Mr. Mfomboutmoun, are you able to
19    understand me with the assistance of the interpreter?
20              THE DEFENDANT:  Yes.
21              THE COURT:  Folks, I apologize.  I left a paper
22    that I need in my office.  I'll be one moment.  Please
23    forgive me.
24              (Pause in proceedings)
25              THE COURT:  Mr. Mfomboutmoun, there are a number
```

1    of things I have to ask you and some things I have to

2    explain to you today.  Your answers to me must be truthful

3    so I'm going to have you sworn in.

4                (Defendant is sworn)

5                THE CLERK:  Please state your name for the record.

6                THE DEFENDANT:  My name is --

7                THE CLERK:  Can you spell it for us, please?

8                THE DEFENDANT:  M-f-o-m-b-o-u-t-m-o-u-n, Seidou,

9    S-a-i-d-o-u.

10               MR. GORDON:  It's S-e.

11               THE DEFENDANT:  S-e-i-d-o-u.

12               THE COURT:  How do you address yourself?  Is it

13   Mr. Mfomboutmoun or Mr. Seidou?

14               THE DEFENDANT:  I'm called Mr. Seidou.

15               MR. SINCLAIR:  Mr. Seidou.

16               THE DEFENDANT:  Seidou.

17               MR. SINCLAIR:  Your Honor, my understanding is

18   that it's polite to refer individuals from Mr.

19   Mfomboutmoun's country as simply Seidou.  It's not

20   disrespectful.

21               THE COURT:  You prefer if I simply address you as

22   Seidou?

23               THE DEFENDANT:  Either way is okay.

24               THE COURT:  How have you been addressing your

25   client?

```
 1              MR. GORDON:  Sir.  (Laughing)  Actually, Mr.
 2   Mfomboutmoun but that may have been my error.
 3              THE COURT:  I'll continue to call you Mr.
 4   Mfomboutmoun.
 5              THE DEFENDANT:  Either way it's great, your Honor.
 6              THE COURT:  Alright.  You understand me, sir, that
 7   having sworn to tell the truth you must tell the truth?
 8              THE DEFENDANT:  Yes.
 9              THE COURT:  If you were deliberately to lie in
10   response to my questions, you could face additional charges
11   for perjury.
12              Do you understand this?
13              THE DEFENDANT:  Yes.
14              THE COURT:  It's very important that you
15   understand what I ask you so if you have any questions, if
16   you need me to explain or repeat something, just let me
17   know.
18              Will you do that, please?
19              THE DEFENDANT:  Yes.
20              THE COURT:  If you need time to confer with your
21   attorney, just let me know that and I'll give you as much as
22   you need.  You'll do that?
23              THE DEFENDANT:  Okay, yes.
24              THE COURT:  Mr. Sinclair, given the nature of the
25   charge, I'm not sure this is relevant but are there any
```

```
 1   identified witnesses to the offense?  Any identified victims
 2   to the offense?
 3            MR. SINCLAIR:  There are no human victims to the
 4   offense, your Honor.
 5            THE COURT:  Are there agencies that have been
 6   notified?
 7            MR. SINCLAIR:  If you're referring to the embassy
 8   notification, the (ui) notification as to U.S. to a non-U.S.
 9   citizen --
10            THE COURT:  No, no, just in terms of the Victims
11   Rights Statute.
12            MR. SINCLAIR:  There's been no notification given
13   under the Victim Rights, there are no identified victims.
14            THE COURT:  That was my question.  Okay.  Now, Mr.
15   Mfomboutmoun, there are two documents that I saw you sign
16   earlier.
17            I want to make sure, did you understand each of
18   these documents before you signed them?
19            THE DEFENDANT:  That's what I have just signed?
20            THE COURT:  Yes.
21            THE DEFENDANT:  Yes.
22            THE COURT:  I will discuss each of them with you
23   as we go through this.  Before we proceed, I need to be sure
24   that you are competent.  And so I'm going to ask you some
25   personal questions.  It's not because I wish to pry.
```

```
1              How old are you?

2              THE DEFENDANT:  I am thirty-seven now.

3              THE COURT:  And how far did you go in school?

4              THE DEFENDANT:  I did college in the third level.

5              THE COURT:  Are you now or have you recently been

6    under the care of a doctor or a psychiatrist for any reason?

7              THE INTERPRETER:  Your Honor, he's asking me to

8    repeat the question again.  I'm going to repeat it.

9              THE DEFENDANT:  I had a test, TB test.

10             THE COURT:  I'll interrupt.  I'm not asking for

11   any tests that you've had.  Are you being treated?  Have you

12   recently been treated by a doctor or a psychiatrist?

13             THE DEFENDANT:  No.

14             THE COURT:  In the last twenty-four hours, have

15   you had any pill or drug or medicine or alcohol?

16             THE DEFENDANT:  No.

17             THE COURT:  Have you ever been hospitalized or

18   treated for any form of addiction or substance abuse?

19             THE DEFENDANT:  No, I have not been involved in

20   drugs whatsoever, no.

21             THE COURT:  Is your mind clear today?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Have you had any difficulty

24   understanding my questions once they're translated?

25             THE DEFENDANT:  No.
```

1          THE COURT:  Mr. Gordon, have you discussed the

2     matter of a guilty plea with your client?

3          MR. GORDON:  Yes, your Honor.

4          THE COURT:  In your view, does he understand the

5     rights that he would waive by pleading guilty?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you have any reason to question his

8     competency to proceed today?

9          THE DEFENDANT:  None whatsoever.

10          THE COURT:  Sir, I'm going to discuss with you now

11     this one page document that you signed.  It's what's called

12     an order of referral.

13          The case is assigned to a higher ranking judge,

14     Judge Matsumoto.  She's appointed by the president for life.

15     And she will be the one who imposes the sentence on you if

16     you're convicted.  If you wish, there'll be no harm to you

17     if you prefer to have Judge Matsumoto hear your guilty plea.

18

19          THE DEFENDANT:  No.

20          THE COURT:  Okay.  As long as you understand that

21     you have the right to have Judge Matsumoto hear it.  But if

22     you prefer and I have your consent, I will proceed.

23          THE DEFENDANT:  Okay.

24          MR. GORDON:  Your Honor, I've explained to him

25     that you'll be asking all the questions but actually Judge

1   Matsumoto will be the one that actually accepts the guilty

2   plea.

3           THE COURT:  Correct.  And was it your intention to

4   agree to have me hear your plea when you signed this first

5   copy?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Alright.  I want to be sure that you

8   understand what the government would have to prove in order

9   to convict you of the charge against you.

10          The charge is known as conspiracy to smuggle a

11  certain item known as African elephant ivory.  In proving

12  you guilty, the government would have to prove several

13  different things.

14          First, it would have to prove that you entered

15  into an agreement with at least one other person.  It would

16  have to prove that the purpose of that agreement was to

17  bring into the United States African elephant ivory, to do

18  it against the law of this country and to receive that ivory

19  or conceal it or buy it or sell it or facilitate it's

20  concealment or sale knowing that the ivory had been brought

21  into the United States in violation of certain laws.

22          They'd also have to prove that you acted knowingly

23  and intentionally.  They'd have to prove that -- Well, let

24  me ask the prosecutor, (ui) fraudulently entered.  Is there

25  an element of fraud?

1          MR. SINCLAIR:  This tracks the statute to the 545

2   statute; fraudulent and knowingly.

3          THE COURT:  Yeah, knowingly I understand.

4          MR. SINCLAIR:  Yes.

5          THE COURT:  I don't understand that there

6   necessarily have to be a misrepresentation.

7          MR. GORDON:  I'd like to clarify, your Honor.  I

8   think it's by bringing it in secretly, not declaring it

9   that's a fraud.

10          THE COURT:  Okay.

11          MR. GORDON:  And, your Honor, it's my

12   understanding that they'd have to an agreement either to

13   import it or to receive it knowing it had been imported.

14          MR. SINCLAIR:  That's correct.

15          THE COURT:  That's fine.  They'd have to prove an

16   agreement with at least one other person.  The agreement

17   would have to be to accomplish at least one of these things:

18   either to bring in the ivory and conceal it and bring it in,

19   smuggle it in, or to receive it after it had been brought

20   into this country in violation of law or to conceal it or

21   buy or sell the ivory or to conceal it's transportation for

22   sale.

23          They'd have to prove that you acted intentionally

24   and knowingly.  They'd have to prove that this agreement

25   existed within a time period mentioned in the indictment.

1   From March of 2006 through the beginning of December of

2   2008.

3           Do you wish to interrupt?

4           MR. GORDON:  Only that it has to be at some point

5   within that time period, not the entire time period.

6           THE COURT:  Yes, that the agreement existed at

7   some point during that period.  And they'd also have to

8   prove that you or somebody else within that agreement did at

9   least one thing to make that agreement succeed.

10          I'm sorry, they'd also have to prove that

11  something relating to that agreement took place within the

12  geographical area known as the Eastern District of New York,

13  which includes Kennedy Airport.

14          Do you understand what the government would have

15  to prove?

16          THE DEFENDANT:  I understand, your Honor.

17          THE COURT:  Have I omitted any of the essential

18  elements?

19          MR. SINCLAIR:  I believe you've identified them

20  all.

21          THE COURT:  These are the things that the

22  government would have to prove if they were to try and

23  convict you.  You have the right to plead not guilty and

24  make them prove it.

25          Do you understand that?

1          THE DEFENDANT:  Yes, I understand, your Honor.

2          THE COURT:  If you plead not guilty, you would be

3    entitled to a speedy and a public trial by a jury with the

4    assistance of your attorney.

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  If you could not afford to retain an

8    attorney, Mr. Gordon would continue to represent you at the

9    trial --

10          MR. GORDON:  I'm assigned.  I'm assigned.

11          THE COURT:  Mr. Gordon would continue to represent

12    you at the trial at no cost to yourself.  And he would

13    continue to represent you or somebody would represent to any

14    appeal if there was an appeal.

15          Do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  At the trial, you would be presumed

18    innocent and the government would have to overcome that

19    presumption and prove you guilty beyond a reasonable doubt.

20          If the government failed -- I'm sorry.  You would

21    not have to prove that you were innocent.  If the government

22    failed to prove your guilt beyond a reasonable doubt, the

23    jury would have a duty to find you not guilty.

24          Do you understand?  Do you understand?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Also, at the trial the government

2    would have to bring its witnesses to court so that they

3    could testify in your presence.

4          Your attorney would have the right to cross-

5    examine the witnesses.  He could object to any evidence that

6    the government tried to offer against you.  He could offer

7    evidence in your behalf if he thought that there was

8    evidence that could assist you.  And he could compel

9    witnesses to come to the courtroom if there were witnesses

10   he wished to question.

11         MR. GORDON:  Your Honor, on the specific facts of

12   this case, it's my understanding that Judge Matsumoto had

13   ordered a deposition with respect to a witness so that that

14   particular witness, if he's unavailable for trial, the

15   confrontation and the cross-examination might occur only at

16   a deposition, videotaped deposition, at which Mr.

17   Mfomboutmoun and I would be present so that the trial

18   itself --

19         THE COURT:  I'm familiar with that.

20         MR. GORDON:  Yeah, I know but since you said he

21   would have the right to have the witnesses --

22         THE COURT:  And I'm explaining his rights to him.

23   If I omit a right that he would have, I'm sure you'll tell

24   me.  But let's not needlessly complicate this because every

25   one of his constitutional rights would be protected just as

1  much at the deposition as it would be at trial.

2         MR. GORDON:  Oh, I didn't say that.  I didn't say

3  that, your Honor.  However, you said he has a right to

4  confront the witnesses at the trial and in this case --

5         THE COURT:  A deposition is considered part of the

6  trial.

7         MR. GORDON:  Fine.

8         THE COURT:  Anything else that you want to explain

9  to your client?

10         MR. GORDON:  No, no.

11         THE COURT:  Okay.  Do you understand the rights

12  that you would have that I've explained to you and that your

13  counsel has just explained to you?

14         THE DEFENDANT:  Yes.

15         THE COURT:  At the trial you also would have a

16  right to testify if you wish to do so.

17         Do you understand that?

18         THE DEFENDANT:  Yes.

19         THE COURT:  You could not be forced to be a

20  witness at your trial and that's because under our

21  Constitution no person can be made to be a witness against

22  himself.  So, if you decided to go to trial and decided not

23  to testify, the Court would instruct that the jury could not

24  hold that fact against you.

25         Do you understand that?

```
1              THE DEFENDANT:  Yes, I understand.

2              THE COURT:  If you plead guilty and if based on my

3    recommendation the judge accepts your plea, if she accepts

4    that plea, you'll be giving up your right to a trial and

5    these other rights that I've discussed with you.

6              There will be no trial.  You will simply be found

7    guilty based on your plea.  You won't be allowed to appeal

8    the determination of guilt.  And you won't be able to

9    challenge that determination of guilt in any later

10   proceeding.

11             THE DEFENDANT:  May I ask you to repeat again,

12   your Honor.

13             THE COURT:  If you plead guilty and it's accepted,

14   there will be no trial, no appeal on the question of your

15   guilt and no later proceeding where you could challenge the

16   determination of guilt.  The question of your guilt will be

17   settled for all time.

18             Do you understand that?

19             THE DEFENDANT:  Okay, yes.  Yes.

20             THE COURT:  You should also understand that if you

21   decide to plead guilty, I'm going to ask you what you did

22   that makes you guilty.  If you answer my question, you'll be

23   giving up your right not to be a witness against yourself.

24             Do you understand that?

25             THE DEFENDANT:  Yes.
```

```
1                THE COURT:  Are you willing to give up your right
2    to a trial and these other rights that I've just discussed
3    with you?
4                THE DEFENDANT:  May I ask you to repeat, your
5    Honor?
6                THE COURT:  Do you want to abandon the right to a
7    trial and the other rights that I've just described?
8                THE DEFENDANT:  Yes.
9                THE COURT:  Let's turn now to the plea agreement,
10   your agreement with the government.  This is the document I
11   saw you sign before.
12               Before you signed this document, did somebody
13   translate it for you?
14               THE DEFENDANT:  Yes.
15               THE COURT:  Did you understand it before you
16   signed it?
17               THE DEFENDANT:  Yes, I did.  I understand.  Yes, I
18   understood.
19               THE COURT:  I'm not going to go through it item by
20   item because I don't want to give you the wrong impression
21   that one part is more or less important than another part.
22   As far as I can tell, this entire document is your
23   agreement.
24               Is that your understanding as well?
25               THE DEFENDANT:  Yes.
```

1          THE COURT:  Do you think that the government has

2   promised you anything that isn't written down in this

3   document?

4          THE DEFENDANT:  No.

5          THE COURT:  Mr. Gordon, is that your understanding

6   as well?

7          MR. GORDON:  Yes, that's correct.

8          THE COURT:  Mr. Sinclair, is it your

9   understanding?

10         MR. SINCLAIR:  That is my understanding, your

11  Honor.

12         THE COURT:  Let's discuss the sentencing

13  possibilities.  If you're convicted of this offense the

14  maximum prison term is five years.

15         Do you understand?

16         THE DEFENDANT:  Yes.

17         THE COURT:  There is no minimum prison term.  If

18  you are sentenced to prison, the Court can also impose a

19  term of what's called supervised release.  The term would be

20  up to three years.  What supervised release means after you

21  are released from prison you'll be under supervision and

22  you'll have obey certain conditions.

23         If you violate any of those conditions of your

24  release you could be returned to prison for up to two years

25  without credit for the time that you had already been in

1  prison and without credit for the time that you had already

2  completed under supervision.

3          Do you understand that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  In addition to prison and supervised

6  release, the Court can impose a fine.  Now the fine can be

7  as much as $250,000.  It could be higher.  The Court could

8  also impose a fine equal to double the amount that either

9  you gained or somebody else lost as a result of the crime.

10          And I don't know what that number would be.  So, I

11  can't tell you today what the maximum possible dollar amount

12  of the fine would be.  And if you need to know what that

13  maximum amount is before you plead guilty, you should not

14  plead guilty because I can't tell you.

15          Do you understand that?

16          THE DEFENDANT:  Yes, I understand, your Honor.

17          THE COURT:  In addition to everything else I've

18  described, the Court must also require you to pay something

19  called a special assessment in the amount of $100.

20          Do you understand?

21          THE DEFENDANT:  Yes, I understand.

22          THE COURT:  You should also assume that if you are

23  convicted of this offense that you will eventually be

24  deported from this country.

25          Do you understand that?

1          THE DEFENDANT:  Yes, I understand.

2          THE COURT:  In addition, the Court can require you

3    to forfeit, to give up, the gains or the property associated

4    with this offense.  And the specific property at issue that

5    you would have to forfeit is listed on pages five, six and

6    seven of the plea agreement.

7          Do you understand?

8          THE DEFENDANT:  Yes, I understand.

9          THE COURT:  And you've reviewed the list of

10   properties that would be forfeited?

11         THE DEFENDANT:  Yes.

12         MR. GORDON:  I've explained, your Honor, that it

13   includes all the ivory that not all of which is attributable

14   to Mr. Mfomboutmoun.  He doesn't have an interest in all

15   that property but it doesn't matter.

16         THE COURT:  Right.  And there's also I see a

17   couple of vehicles.

18         MR. GORDON:  Those are not his.

19         THE COURT:  Okay.

20         MR. SINCLAIR:  Nevertheless, he's forfeiting his

21   interest -- any interest that he might have.

22         THE COURT:  What we're talking about is that all

23   of these items listed on pages five through seven, whether

24   they are now yours or somebody else's, you would give up any

25   claim you might have to any of those items.

1          Do you understand that?

2          THE DEFENDANT:  Yes, I understand.

3          THE COURT:  Alright.  Now in deciding what

4    sentence to impose the Court will have to take into account

5    the federal sentencing guidelines.

6          And I see -- Have you discussed the guidelines

7    with your attorney?

8          THE DEFENDANT:  Yes.

9          THE COURT:  I see that there's a calculation in

10   the plea agreement that predicts what the guideline offense

11   level will be in this case.

12         THE INTERPRETER:  I'm sorry, your Honor, I didn't

13   hear.

14         THE COURT:  I'll start again.  I see that in the

15   plea agreement there's a calculation of what the guideline

16   recommendation will be in this case.

17         What I want to make sure you understand is that

18   what's written down about the guidelines here is an

19   estimate.  Nobody here knows for sure what the guidelines

20   will be.  They will be calculated later by Judge Matsumoto.

21         Do you understand?

22         THE DEFENDANT:  Okay.

23         THE COURT:  Okay.  Now the way these guidelines

24   work is they help the judge choose a sentence by coming up

25   with two scores that measure the case.

1          One number measures the seriousness of the

2     offense.  So in a case like this the amount of ivory, for

3     example, would affect the score.

4          Do you understand?

5          THE DEFENDANT:  Yes, I understand.

6          MR. GORDON:  Your Honor, I think it's actually the

7     value of the ivory rather than the number of pieces.

8          THE COURT:  (Ui).  The other number is based on

9     any crimes you've committed in the past, convictions and

10    time in jail.

11         Do you understand?

12         THE DEFENDANT:  May I ask that you repeat again,

13    your Honor?

14         THE COURT:  The second number measures your own

15    criminal history; convictions, time in jail and similar.

16         THE DEFENDANT:  No, I wasn't asked it.

17         THE COURT:  I'm not asking if you were.  That's a

18    different number that can affect the guidelines.

19         THE DEFENDANT:  Okay.

20         THE COURT:  When the judge has those two numbers

21    she can look up on a table the appropriate guideline range.

22         Do you understand?  Do you understand?

23         THE DEFENDANT:  Yes.

24         THE COURT:  That will provide the judge will a

25    recommendation of an appropriate sentence.  And the judge

1    must consider it.  But she can also impose a higher or a

2    lower sentence.  Ultimately, the judge will impose a

3    sentence that she thinks is reasonable under all of the

4    circumstances.

5            Do you understand?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Now, before the judge sentences you,

8    the Probation Department will interview you and they'll talk

9    to the government and they'll prepare a report about the

10   case.

11           That report will have information about you and

12   about the case.  It will discuss the law and it will

13   calculate the sentencing guidelines.  You will have a chance

14   to review that report with your attorney.

15           Do you understand?

16           THE DEFENDANT:  Yes.

17           THE COURT:  You may not like what you see in the

18   report.  You may think there's a mistake or that something

19   is unfair.  That will not be a reason for you to take back

20   your guilty plea.

21           Do you understand?

22           THE DEFENDANT:  Yes.

23           THE COURT:  What you can do, if you think there's

24   something wrong with the report, is object.  And the judge

25   will hear your objection and she'll rule on that objection

1  and she'll calculate the guidelines for herself and she'll

2  hear you and then she'll impose a sentence.

3         Do you understand?

4         THE DEFENDANT:  Yes, I understand.

5         THE COURT:  At any step along the way --

6         THE DEFENDANT:  (Ui).

7         THE COURT:  No, in doing what I've just described;

8  ruling on objections and listening to you and calculating

9  the guidelines, in any of those steps, you may think the

10 judge makes a mistake or you may think she acts unfairly;

11 that will not be a reason to take back your guilty plea.

12        Do you understand?

13        THE DEFENDANT:  Yes.

14        THE COURT:  Now normally, if you think the judge

15 makes a mistake in the sentencing, you would be entitled to

16 appeal the sentence.

17        Do you understand that?

18        THE DEFENDANT:  Yes, I understand.

19        THE COURT:  However, I see in the plea agreement

20 that -- and this is in paragraph four on page four -- that

21 if the judge imposes a sentence of sixteen months or less,

22 that you give up your right to appeal the sentence.  What

23 that means is that even if you think she makes a mistake in

24 imposing a sentence, as long as sixteen months, you won't

25 complain about it to a higher Court.

1          Is that your understanding as well?

2          THE DEFENDANT:  Yes, I understand.

3          THE COURT:  And is it your intention to give up

4    that part of your right to file an appeal?

5          THE DEFENDANT:  I'm sorry, your Honor.

6          THE COURT:  You would normally have the right to

7    appeal the sentence that is incorrect.  So, I'm asking if

8    it's your intention to give up part of your right to appeal

9    by saying you won't appeal even a mistake in sentence that

10   is sixteen months or less?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Okay.  Is there anything you'd like to

13   ask me about the charge in this case, about your rights or

14   about sentencing or anything else?  Do you have any

15   questions?

16         THE DEFENDANT:  No, I don't have.  Thank you.

17         THE COURT:  I'm going to give you one more chance

18   to ask something.  It's important because people sometimes

19   change their minds.

20         And if you change your mind later and come back to

21   court and say that you didn't understand something, the

22   prosecutor will get a transcript of today's proceeding and

23   he'll go back to the Court and say that you understood

24   exactly what you were doing and that you shouldn't be

25   allowed to take back your plea.  And he'll probably win on

1    that.

2          So, it's very important if there's anything that

3    you don't understand or that you need to know that would

4    affect your decision about whether to plead guilty, now's

5    the time to ask because later it could be too late.

6          Do you understand that?

7          THE DEFENDANT:  Yes, I understand.

8          THE COURT:  Do you want to ask me anything else?

9          (Pause in proceedings)

10         THE DEFENDANT:  Possibly question is with respect

11   to my deportation.

12         THE COURT:  What is the question?

13         THE DEFENDANT:  That's what I would like to have

14   more details on to understand.

15         THE COURT:  It's actually very simple.  You're not

16   a citizen, correct?

17         THE DEFENDANT:  Yes, I'm not U.S. citizen.

18         THE COURT:  If you are convicted of this offense,

19   you should assume that when you are finished when your

20   sentence, if not sooner, you will be deported.

21         Do you understand?

22         THE DEFENDANT:  Yes, I understand.

23         THE COURT:  Is there anything else you'd like to

24   ask me about?

25         THE DEFENDANT:  No.

1          THE COURT:  Do you need further time to discuss

2    the matter with your attorney?

3          THE DEFENDANT:  No.

4          THE COURT:  Mr. Gordon, do you know of any legal

5    reason why your client should not plead guilty?

6          MR. GORDON:  No, your Honor.

7          THE COURT:  Mr. Mfomboutmoun, are you satisfied

8    with the legal representation you have received so far?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Now, tell me how do you plead to the

11    first charge in the indictment, guilty or not guilty?

12          THE DEFENDANT:  Guilty.

13          THE COURT:  Are you making this plea of guilty

14    voluntarily and of your own free will?

15          THE DEFENDANT:  Voluntarily.

16          THE COURT:  Has anyone threatened or forced you to

17    plead guilty?

18          THE DEFENDANT:  No.

19          THE COURT:  Other than your written agreement with

20    the government, has anyone made any promise that is causing

21    you to plead guilty?

22          THE DEFENDANT:  No.

23          THE COURT:  Has anyone promised you what your

24    sentence will be?

25          THE DEFENDANT:  No.

1        THE COURT:  Tell me please in your own words what

2   you did that you think makes you guilty of the offense

3   that's charged.

4        THE DEFENDANT:  I arranged to smuggle with people

5   ivory to this country.

6        THE COURT:  Alright.  Did you know that what you

7   were importing was African elephant ivory?

8        THE DEFENDANT:  Yes.

9        THE COURT:  Did you know that there were treaties

10  that made it illegal to bring in this African elephant

11  ivory?

12       THE DEFENDANT:  Yes.

13       THE COURT:  And did you have an agreement with at

14  least one other person to do this?

15       THE DEFENDANT:  Yes.

16       THE COURT:  Was any ivory actually brought into

17  this country as part of that agreement?

18       THE DEFENDANT:  Yes.

19       THE COURT:  Do you know if any of it came in at

20  Kennedy Airport?

21       THE DEFENDANT:  Yes.

22       THE COURT:  When did this happen?  When was this

23  ivory being brought in?

24       THE DEFENDANT:  From 2007 to 2008.

25       THE COURT:  Alright, I think that satisfies all of

1    the essential elements.  Mr. Sinclair, is there anything

2    further that you would like me to either to illicit or that

3    you would like to proffer?

4              MR. SINCLAIR:  No, your Honor, I think there's a

5    factual basis for the plea.

6              THE COURT:  Alright, is there anything further

7    that you would like me to cover for purposes of Rule 11?

8              MR. SINCLAIR:  Nothing further, your Honor.

9              THE COURT:  Mr. Gordon, is there anything further

10   you think I should cover under Rule 11?

11             MR. GORDON:  No, your Honor.

12             THE COURT:  Alright.  Based on what I've heard

13   today, I find that Mr. Mfomboutmoun is competent to proceed.

14   I find that he is acting voluntarily and that he fully

15   understands his rights and the potential consequences of hie

16   plea and that there is a factual basis for his plea of

17   guilty.

18             I therefore respectfully recommend that the Court

19   accept the defendant's plea of guilty to Count 1 of the

20   indictment.

21             Do you have a date to give for sentence?

22             THE CLERK:  (Ui).

23             THE COURT:  I don't see that there.  Alright, I'll

24   ask you folks to contact the Probation Department and the

25   Court.

1            MR. GORDON:  And I would like to be present for

2    the presentence interview.  I think it's noted on the

3    report.

4            THE COURT:  Alright.  That's noted.  Is there

5    anything further, folks?

6            MR. GORDON:  No, your Honor.

7            MR. SINCLAIR:  Nothing further, your Honor.

8            THE COURT:  Thank you, all.

9            ALL:  Thank you.

10            THE COURT:  I'll return to Mr. Sinclair the plea

11    agreement.

12            MR. SINCLAIR:  And the indictment, too, your

13    Honor, please?

14            THE COURT:  I'm sorry?

15            MR. SINCLAIR:  I gave you my copy.

16            THE COURT:  Thank you.

17            MR. SINCLAIR:  Thank you.

18            * * * * * * * * * * * *

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18        I certify that the foregoing is a correct transcript

19   from the electronic sound recording of the proceedings in

20   the above-entitled matter.

21

22

23

24

25   ELIZABETH BARRON                    April 7, 2009